UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SCHUPAK GROUP, INC., SPONSOR FOR SCHUPAK RETIREMENT PLAN AND PROFIT SHARING PLAN | : | CIVIL ACTION NO.: 10-cv-0209(SAS)(FM) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA | : |  |
|  | : |  |
| Defendant. | : |  |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, New York 10005

*Counsel for Defendant*
*Travelers Casualty and Surety Company of America*

*Of Counsel*:
  Richard S. Mills
  Carol A. Pisano

*On the Brief*:
  Richard S. Mills
  Carol A. Pisano

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii-v

PRELIMINARY STATEMENT..........................................................1-3

STATEMENT OF FACTS ................................................................4-7

ARGUMENT

    POINT I – The Legal Standard for Determining Motion to Dismiss...................7-9

    POINT II – Plaintiff Cannot Establish That Bernard Madoff
                 Was a Plan Trustee For Which The Travelers Bond
                 Affords Employee Dishonesty Coverage......................................9

        A.  Plaintiff Refuses to Produce Document Evincing Appointment
            Or Acceptance of Bernard Madoff as Trustee.......................9-12

        B.  Trustee As Custodian is Precluded by Law...........................12-13

        C.  Mutually Exclusive: An Investment Manager
            Cannot Be A. Trustee.................................................14-15

        D.  Independent Contractor Is Not A Covered "Employee"............15-17

    POINT III – Plaintiff's Failure to Submit A Proof of Loss Or Supporting
               Documentation to Establish Coverage for Bernard Madoff
               As Trustee Warrants Dismissal of the Complaint........................17-20

CONCLUSION.............................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arnone v. CA, Inc.,*  2009 WL 362304, 5 (S.D.N.Y., Feb 13, 2009)....................15-16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 127 S.Ct. 1955, 1965, (2007))................3, 8

*Building Service 32B-J Health, Pension and Annuity Fund v.*
  *Vanderveer Estates Holding, LLC*  121 F.Supp.2d 750, 754, FN2
(S.D.N.Y.,2000)..........................................................................15

*Chaddick v. Allstate Ins. Co.*, Slip Copy, 2009 WL 455183 (W.D.La. 2009)...............19

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-153 (2d Cir.2002)......................8

*Citadel Broadcasting Corp. v. Dolan*  2009 WL 4928935,
(S.D.N.Y., Dec 21, 2009)...............................................................8

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957)...........................................3

*Dawkins v. Witt,* 318 F.3d 606 (4th Cir.2003)................................................20

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.Supp.2d
293(S.D.N.Y.,2003)....................................................................19

*Egan v. Marsh & McLennan Companies, Inc.*  2008 WL 245511, 4
(S.D.N.Y Jan.30, 2008)..................................................................8

*Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1 (1947)...........................20

*Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386 (9th Cir.2000)...........................20

*Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir.1998)........................................20

*Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009).......................................8

*In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007)...........................8

*International Union of Bricklayers and Allied Craftsmen v. Gallante,*
912 F.Supp. 695, 701 (S.D.N.Y., 1996)..................................................9, 11

*Iqbal v. Ashcroft* 129 S.Ct. 1937(2009).....................................................3, 8

TABLE OF AUTHORITIES (Continued)

*Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.,*
104 F.3d 258 (9th Cir. (Cal.),1996)......................................................15-17, 20

*Kehoe v. Travelers Ins. Co.,* 2009 WL 87589 (NDNY 2009)..............................19

*Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991).............................8

*Lowen v. Tower Asset Management, Inc.* 829 F.2d 1209, 1218 -1219
(2d. Cir., (NY) 1987).....................................................................................14

*Mancini v. Redland Ins. Co.,* 248 F.3d 729, 733-34
(8th Cir.2001)...........................................................................................20

*Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006)..................................8

*M.D. Phelps v. FEMA,* 785 F.2d 13 (1st Cir.1986)............................................20

*Moore v. INA Life Ins. Co. of New York,*
66 F.Supp.2d 378, 387-89 (E.D.N.Y.,1999).......................................................19

*Nyasco Sports, Inc. v. Director, Federal Emergency Management Agency,*
561 F.Supp. 64 (S.D.N.Y.,1983)....................................................................18

*Phillips v. County of Allegheny* 515 F.3d 224, 234 (3d Cir. 2008)............................3

*Sanz v. U.S. Sec. Ins. Co.,* 328 F.3d 1314, 1318 (11th Cir.2003)...........................20

*Selevan v. New York Thruway Auth.,* 584 F.3d 82, 88 (2d Cir.2009)..........................8

*Stradford v. Zurich Ins. Co.* 2002 WL 31819215, 4-6 (S.D.N.Y.,2002)...............19,21

*Suopys v. Omaha Property & Cas.,* 404 F.3d 805, 810 (3d Cir.2005)......................20

**STATE CASES**

*Caporino v. Travelers Ins. Co.,* 62 N.Y.2d 234, 240, 476 N.Y.S.2d 519,
521(1984).................................................................................................18

*Goodale v. Pioneer Ins. Co.,* 614 N.Y.S.2d 657  (3d Dept.1994)............................18

*Maleh v. New York Prop. Ins. Underwriting Assn.,* 64 N.Y.2d 613,
485 N.Y.S.2d 32 (1984)...............................................................................19

## TABLE OF AUTHORITIES (Continued)

*Saba Rug, Inc. v. Great American Ins. Companies,*
678 N.Y.S.2d 629 (1st.Dept.,1998)...................................................................19

*Vena v. State Farm Fire and Cas. Co.,* 610 N.Y.S.2d 410 (3d Dept.,1994)...............19

*Weissberg v. Royal Ins. Co.,* 240 A.D.2d 733, 734,
659 N.Y.S.2d 505 (2d. Dept. 1997)............................................................19,21

## STATUTES & REGULATIONS

26 U.S.C.A. § 401(a)....................................................................................9

26 U.S.C.A. § 401(c)(1)...............................................................................12

26 U.S.C. § 401 (f)(2)..................................................................................13

26 U.S.C.A. § 408.......................................................................................12,13

29 U.S.C. § 1001  *et seq*............................................................9, 10, 11,14, 20

29 U.S.C.A. § 1105 (d)................................................................................14-15

26 C.F.R. § 1.401(f)-1 (c).............................................................................12

26 C.F.R. § 1.401(f)-1(b)(ii).........................................................................13

26 C.F.R.1.408-2(e)....................................................................................13

IRC § 401(a)...............................................................................................9

IRC § 408..................................................................................................12

Labor Reg. § 2510.3-101.............................................................................9

N.Y.Ins.L. 3470(a)......................................................................................18

## RULES

F.R.Civ.P. 12(b)(6).....................................................................................7,21

TABLE OF AUTHORITIES (Continued)

MISCELLANEOUS

4 N.Y.Prac. Comm. Litig.§ 60:10 (2d)..........................................................19

AMJUR Pensions § 111 (Naming plan fiduciary – Plan flexibility
with respect to naming trustees and additional fiduciaries.)................................11

Canan, Michael, J., 8B West's Legal Forms, Retirement Plans § 7.3
(4th ed.) (2009)..............................................................................................12

Norbert Wegerzyn & John Morrissey *Fidelity Insurance Policies:*
*Yesterday, Today and Tomorrow, in,* Handling Fidelity Bond Claims,
(1st ed., Michael Keeley et al eds., 1999); see also Michael Keeley and
Harvey C. Koch, *Employee Dishonesty: The Essential Elements*
*of Coverage Under Insuring Agreement (A), in*
Financial Institution Bonds (2d ed., Duncan L. Clore ed., 1998)...........................9

## PRELIMINARY STATEMENT

This is an action by plaintiff seeking to recover under a Bond issued by Travelers Casualty and Surety Company of America ("Travelers") for loss plaintiff claims to have incurred as a result of theft by Bernard L. Madoff.

The proof of loss form completed by plaintiff, together with the attachments and the correspondence exchanged between Travelers and plaintiff concerning the same, are, according to plaintiff, "all of the information available evidencing Madoff's role as a trustee of the Plan's assets…." (Exhibit H). As a matter of law, that information, all of which is attached as exhibits to the plaintiff's complaint, constitutes documentary evidence of plaintiff's inability to state a claim against Travelers upon which plaintiff could ever be granted relief under the Bond.

## THE BOND

Plaintiff seeks to recover under the following coverage agreement of the Bond:

A. COVERAGE

We will pay only for loss of "property" sustained by you resulting directly from dishonest or fraudulent acts committed by an "employee" acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the "employee" with the manifest intent:
1 . to cause you to sustain such loss; and
2. to obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for the "employee" or another person or entity.

(Complaint, ¶ 12 and Exhibit "A").

The Bond defines "employee" to mean:

any natural person who is:
a.  A trustee, an officer, employee, administrator or a manager, **except an administrator or a manager who is an independent contractor,** of any Employee Welfare or Pension Benefit Plan (hereafter called Insured Plan) covered under this Policy; and

    b.  Your director or trustee while that person is handing Funds or other property of any Insured Plan covered under this Policy.

(Complaint, ¶ 12 and Exhibit "A")(emphasis added).

The Bond's preamble provides that the word "you" used in the above quoted coverage agreement and the word "your" used in sub-paragraph b. of the above quoted definition of "employee" refer to the Insured Plan(s) shown in Item 2" of the Bond's Declarations. (Complaint, Exhibit "A" at page 1). Pursuant to the Bond's Declarations, the Insured Plan(s) under the Bond is the Schupak Retirement Plan and Profit Sharing Plan, of which the Schupak Group Inc. is alleged to be the Sponsor. (Complaint, Exhibit "A" at page 1, Items 1 & 2).

Thus, coverage is afforded under the Bond for (i) trustees, (ii) officers, (iii) employees, (iv) administrator(s) or (v) manager(s) of the Insured Plan; but is not afforded for administrator(s) or manager(s) who are independent contractors.

Plaintiff alleges that Madoff qualifies as an "employee" under the Bond because, allegedly, Madoff was a trustee included as an "employee" under the Bond's definition. However, the documentary evidence attached to plaintiff's complaint demonstrates, as a matter of law, that: (1) Madoff was not a trustee of an Insured Plan(s); and (2) Madoff does not qualify as an employee under the Bond's definition.

Additionally, Plaintiff's failure (indeed, refusal) to submit an adequate proof of loss, and to cooperate with Travelers investigation of the claim, *e.g.* by declining to produce Plan records requested by Travelers, affords sufficient independent grounds to warrant dismissal of the complaint.[1]

---

[1] See Point III at pp. 17-20

The Bond specifies the plaintiff's duties in the event of a loss:

**E. General Conditions**

*     *     *

2. **Your Duties in the Event of Loss**:  After you discovery a loss or situation that may result in loss of "property" you must:

*     *     *

    b. Give us a detailed, sworn proof of loss within 120 days;
    c. Cooperate with us in the investigation and settlement of any claim; and
    d. Permit us access to your premises and your books and records.

Plaintiff continually failed to recognize its duty under the Bond to provide documents sought by Travelers, and in so doing breached the foregoing conditions precedent to recovery under the Bond.

When combined with the legal futility of the convoluted argument pursuant to which plaintiff seeks to manufacture coverage for its claim, the grounds for dismissal are compounded.[2] There is absolutely no proof, or any logical or legal way that Bernard Madoff was  a Trustee of the Insured Plan(s), an absolute prerequisite to coverage.  Moreover, the complaint fails to plead "[ ]'enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element." *Phillips v. County of Allegheny* 515 F.3d 224, 234 (3d Cir. 2008)(*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 127 S.Ct. 1955, 1965, (2007)).[3]

In sum, plaintiff's complaint fails to state a cause of action upon which it can recover against Travelers under the Bond's coverage agreement.

---

[2] See Point II at pp. 9-17

[3] On November 19, 2009, legislation was introduced in the U.S. House of Representatives that seeks to reverse *Twombly*, *infra* and *Iqbal v. Ashcroft* 129 S.Ct. 1937(2009), and return the pleading standard to what it was *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957) (a case could proceed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")  It is respectfully submitted that the instant complaint cannot satisfy either pleading standard, and that dismissal is warranted no matter which standard is applied.

## STATEMENT OF FACTS

Travelers received notice of plaintiff's claim by letter dated January 13, 2009 from plaintiff's broker, Mr. Kevin D.W. Hewgley of Lockton Financial Services.  By letter dated January 14, 2009, Travelers acknowledged the notice of claim, requested a proof of loss and provided plaintiff with a proof of loss form . (Complaint, Exhibit "B").

Thereafter, on or about January 29, 2009, Travelers received a completed (but unsigned) proof of loss form (with attachments) from the plaintiff alleging a loss due to "Bernard L. Madoff, delegated by the Plan Trustee as Custodian and Investment Trustee."  No documents evidencing this alleged delegation were included with the proof of loss form. (Complaint, ¶ 16 and Exhibit "B").

The cause of the alleged loss was stated to be "through fraud and theft" arising from the following circumstances:

> From April 23, 2003, the Schupak Group Defined Benefit Plan invested funds as a limited partner in FGLS, LLC, which in turn entrusted the funds to Bernard L. Madoff as custodian and investment trustee. On December 11, 2008, Bernard Madoff, was arrested for securities fraud and confessed his fraud. Insured expects no more than a de minimus recovery based upon SIPC limitations and public statements by Madoff's liquidating trustee.

(Complaint, Exhibit "B").

Plaintiff's purported proof of loss attached statements from FGLS, LLC ("FGLS"), which referenced plaintiff's percentage of capital in that entity, as well as the capital interests of several of its other investors as of 2008. The statements attached to the proof of loss form also showed the income (loss) earned by FGLS in 2008 via the investments it made with Madoff Securities, LLC, Bank of America and through additional capital deposited or withdrawn by FGLS's

investors. The income/loss statements also indicated each investor's percentage share in the accrued income or loss. (Complaint, Exhibit "B").

On February 26, 2009, Travelers acknowledged receipt of plaintiff's proof of loss submission and advised plaintiff of a coverage issue regarding whether Bernard Madoff qualified as an "employee" whose conduct would be covered under the Bond's coverage agreement. The letter highlighted the fact that the Bond's definition of "employee" does not include administrators or managers who are independent contractors. (Complaint, ¶ 20 and Exhibit "C").

In order to determine whether Madoff qualified as an "employee" under the Bond's definition, Travelers' letter of February 26, 2009 requested "copies of any agreements, contracts or other documents between the Insured and Bernard L. Madoff Securities, LLC",. (Complaint, Exhibit "C").

By letter dated April 2, 2009, plaintiff, through its Plan Administrator, Thomas Schupak, responded to Travelers' February 26, 2009 letter, but provided no further information or documents. Plaintiff's letter acknowledged that the Bond's definition of "employee" does not extend to managers or administrators that are independent contractors, but argued that Madoff qualified as an "employee" under the definition because, allegedly, Madoff was a trustee by virtue of the fact that "Bernard L. Madoff Securities LLC was entrusted with the Plan's funds over which it was provided trading discretion…." (Complaint, ¶¶ 22-3 and Exhibit "D").

Plaintiff's April 2, 2009 letter acknowledged that the Bond's definition of employee includes only a trustee that is a "natural person." However, the letter provided no explanation for its leap-frog-like conclusion that Bernard Madoff, a natural person, was the trustee of funds deposited with "Bernard L. Madoff Securities, LLC," a corporate entity; nor did the letter address the fact that the Insured Plan(s) had actually "entrusted" its funds with FGLS, and not

5

with either Bernard L. Madoff Securities, LLC, the corporate entity, or Bernard Madoff, the natural person.  The letter included no evidence that Bernard Madoff was a trustee of the Insured Plan(s), but nakedly concluded that Madoff became a trustee of an <u>asset</u> of the Plan(s). (Complaint, Exhibit "D").

On April 10, 2009, Travelers responded to plaintiff's April 2, 2009 letter, explaining that the status of Plan Trustee could only be achieved in accordance with the methods established by ERISA. Travelers' April 10, 2009 letter enumerated those methods and again requested proof that Madoff had been appointed a trustee of the Insured Plan(s) in accordance with one of those methods, *i.e.*, pursuant to the Plan documents, trust instrument or another document evidencing Bernard Madoff's status as a trustee of the Insured Plan(s), or otherwise establishing that Madoff qualified as an employee under the Bond's definition. (Complaint, ¶ 24 and Exhibit "E"). On April 23, 2009, again acting through its Plan Administrator, Thomas Schupak, the plaintiff responded to Travelers' April 10, 2009 letter, but again produced no documents to support its contention that Madoff qualified as a Plan Trustee or employee under the Bond. (Complaint, ¶ 25 and Exhibit "F").

Plaintiff's April 23, 2009 letter again contended that the Bond's definition of "employee" was met solely because, allegedly, "Madoff had possession of the Plan's funds and had full investment discretion."  Plaintiff's April 23, 2009 letter also stated that "Madoff was engaged by the Plan under the terms of Madoff's account agreement."  However, the account agreement to which the letter referred, was not provided to Travelers.  Based upon the purported proof of loss and attachments and subsequent correspondence between Travelers and the plaintiff, any account agreement would be between Madoff Securities and FGLS, and not with the plaintiff Insured Plan(s). (Complaint, ¶ 25 and Exhibit "F").

On April 29, 2009, Travelers again wrote to plaintiff, advising that because of Schupak's refusal (or inability) to produce the requested documents, Travelers was forced to make a coverage determination based on the record (proof of loss submission) available to it. On the basis of that record, Traveler's, in its April 29, 2009 letter, denied plaintiff's claim, but again invited plaintiff to provide documentation of Madoff's alleged status as an employee/trustee. (Complaint, Exhibit "G")

On May 18, 2009, plaintiff again wrote to Travelers. As was the case with its prior correspondence, no documents were included with plaintiff's May 18, 2009 letter. Plaintiff's May 18, 2009 letter stated that plaintiff had provided Travelers with "all of the information available evidencing Madoff's role as a trustee of the Plan's assets...." (Complaint, Exhibit "H"). By letter dated May 18, 2009, Travelers acknowledged plaintiff's letter of May 18, 2009, and adhered to its coverage denial. (Complaint, Exhibit "I")

On December 21, 2009, plaintiff commenced suit against Travelers by filing the instant action with the Supreme Court of the State of New York, County of New York. On January 11, 2010, Travelers' removed the action to the United States District Court, Southern District of New York.

Pursuant to the Individual Rules of the Court applicable to pre-answer motions, counsel for defendant contacted counsel for plaintiff and requested an extension of time to permit the exchange of letters setting forth the parties' respective positions regarding the grounds for dispositive relief. Copies of the letters exchanged between Travelers' counsel and counsel for the plaintiff are attached to the Mills Aff. as Exhibit 3.

ARGUMENT

POINT I

THE LEGAL STANDARD FOR DETERMINING MOTION TO DISMISS

This Court has articulated the principles applicable to pre-answer motions in several

recent cases that set the standard for determining the instant motion under F.R.Civ.P. 12(b)(6). In

*Citadel Broadcasting Corp. v. Dolan* 2009 WL 4928935, (S.D.N.Y., Dec 21, 2009) this Court

held:

> Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal for "failure to state a claim upon which relief can be granted[.]" In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept as true all of the factual allegations contained in the complaint" [FN40] [*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 572 (2007). *Accord Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009)).] and "'draw[ ] all reasonable inferences in [a] plaintiff['s] favor.'" [FN41] [*Selevan*, 584 F.3d at 88 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir.2009)).] However, a court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." [FN42][*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir.2007) (quotation marks omitted). *Accord Iqbal*, 129 S.Ct. at 1949

*Dolan* 2009 WL 4928935 at* 3. (Footnotes in text).

> On deciding a motion to dismiss, the "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" [FN49] [*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir.2002)).] Additionally, "courts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." [FN50] [*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991).] A court may look to such materials on a Rule 12(b)(6) motion to dismiss.[FN51] [*Staehr v. The Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 426 (2d Cir.2008).]

*Id.* at* 4.

In *Egan v. Marsh & McLennan Companies, Inc.* 2008 WL 245511, 4 (S.D.N.Y Jan.30,

2008) this Court noted the key role that contradictory documentary evidence plays in evaluating

unsupported factual allegations and insupportable legal conclusions of the type found in plaintiff's complaint herein.

> At the motion to dismiss stage, where a plaintiff's "factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,]" in the context of a breach of contract action.

*Id.* (footnote omitted). Under these standards, and given the substantive arguments set forth below, dismissal of the plaintiff's complaint is warranted as a matter of law.

## POINT II

### PLAINTIFF CANNOT ESTABLISH THAT BERNARD MADOFF WAS A PLAN TRUSTEE FOR WHICH THE TRAVELERS BOND AFFORDS EMPLOYEE DISHONESTY COVERAGE

The Travelers Bond, subject to each of its terms, provisions, conditions, limitations and exclusions, provides coverage for losses due to the defalcations of employees, commonly known as "fidelity" or "employee dishonesty" coverage.[4] The term "employee" is defined in the Bond to include trustees of Insured Plan(s). The Insured Plan(s) under the Bond are those that are sponsored by Schupak and that are subject to the Employee Retirement Income Security Act of 1974, as amended, ERISA. 29 U.S.C. § 1001 *et seq.*

Ordinarily, "[t]he assets[5] of pension or profit-sharing plans must be held in a trust created or organized in the United States. IRC § 401(a) 26 U.S.C.A. § 401(a).. The requirement of a trust for qualified retirement plans is echoed by Title I of ERISA (ERISA § 403(a) and (b)), 29

---

[4] Norbert Wegerzyn & John Morrissey *Fidelity Insurance Policies: Yesterday, Today and Tomorrow, in,* Handling Fidelity Bond Claims, (1st ed., Michael Keeley et al eds., 1999); see also Michael Keeley and Harvey C. Koch, *Employee Dishonesty: The Essential Elements of Coverage Under Insuring Agreement (A), in* Financial Institution Bonds (2d ed., Duncan L. Clore ed., 1998).

[5] See also Labor Reg. § 2510.3-101.

U.S.C.A. § 1103(a) and (b), which requires that all the assets of an employee benefit plan be held in a trust by one or more trustees. "The trust is, of course, typically established pursuant to a written trust agreement." *International Union of Bricklayers and Allied Craftsmen v. Gallante,* 912 F.Supp. 695, 701 (S.D.N.Y., 1996).

As demonstrated below, plaintiff has conceded that it can offer no evidence beyond the documents that are attached to its complaint to support the contention that Bernard Madoff was a trustee of the Insured Plan(s). Indeed, the governing law establishes that Madoff could not be a Trustee

### A. PLAINTIFF REFUSES TO PRODUCE DOCUMENTS REQUIRED BY ERISA EVINCING APPOINTMENT OR ACCEPTANCE OF BERNARD MADOFF AS TRUSTEE

ERISA §403(a)) specifies, in pertinent part, as follows:

(a) Benefit plan assets to be held in trust; authority of trustees

Except as provided in subsection (b) if this section, all assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102(a)[6] of this title or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that...

---

[6] 29 U.S.C.§ 1102. Establishment of plan
(a) Named fiduciaries
> (1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.
> (2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

* * *

Pub.L. 93-406, Title I, § 402, Sept. 2, 1974, 88 Stat. 875.)
29 U.S.C.A. § 1102

[omitting exceptions not relevant in the matter at bar]
(29 U.S.C. § 1103(a).

Plaintiff has declined to provide Travelers with the written trust agreement – from which the identity of the plan trustees could easily be determined; or the plan instrument – from which the named fiduciaries authorized to appoint a trustee could be identified; or indeed any document evincing the appointment or acceptance of Bernard Madoff as a Plan trustee.[7] In essence, plaintiff has failed to provide Travelers with any documentary evidence verifying that Bernard Madoff was a trustee of the Insured Plan(s).

Plaintiff alleges that it first provided Plan Assets to Bernard Madoff in 2003, and sustained a loss due to his defalcations as "an investment trustee" in 2008. Complaint, Ex. B. In each year during that period, the plaintiff was obligated to file IRS Form 5500, (Annual Report/Return of Employee Benefit Plan) including schedules C and P,[8] which identify each of the Insured Plan(s)' Trustees. These Schedules each provide a space where the reporting fiduciary (trustee or custodian) must provide his or her signature.  Plaintiff could have easily satisfied Travelers' request for documentation of the appointment and acknowledgement of Bernard Madoff as a Trustee of the Insured Plan(s) by producing any of the relevant schedules filed with the Plan's annual returns, but has declined to provide any information other than that annexed to the complaint.

As noted above, "[u]nder both ERISA and the Labor Management Relations Act, all assets of an employee benefit plan must be held in trust. *See* 29 U.S.C. § 1103(a); 29 U.S.C.

---

[7] See AMJUR Pensions § 111 (Naming plan fiduciary – Plan flexibility with respect to naming trustees and additional fiduciaries.)

[8] From 2003 through 2005, Form 5500 included Schedule P (Annual Return of  Fiduciary of Employee Benefit Trust) used to start the statute of limitations for any trust described in IRC § 401(a) as exempt from taxation under § 501(a). See Blank Form 5500 and Schedules C and P annexed to the Mills Aff.,as Exhibits 2a-c.

11

186(c)(5). The trust is, of course, typically established by a written trust agreement." *International Union of Bricklayers and Allied Craftsmen v. Gallante,* 912 F.Supp. 695, 701 (S.D.N.Y., 1996). "ERISA further provides that every employee benefit plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). This plan instrument governs the operation of the plan. *Id.* These instruments must designate named fiduciaries and plan trustees, and would allow Travelers to easily confirm or reject the Insured's unsupported contention that Bernard Madoff was a trustee. The plaintiff has declined Travelers' request to provide either the plan documents or the trust instrument, in support of its proof of loss.

There are exceptions to the foregoing trust requirement for plan assets held in insurance policies or contracts (29 U.S.C. § 1103 (b) (1)-(2), as well as exclusions for plans covering employees described in IRC § 401(c)(1), 26 U.S.C. § 401(c)(1) and individual accounts described in IRC § 408, 26 U.S.C.A. § 408 which have no application here.[9] Likewise, the law makes an exception from the trust requirement for funds held in custodial accounts which qualify under IRC § 401(f). As is demonstrated below, the custodial account exception cannot be met by Bernard Madoff.

### B. TRUSTEE AS CUSTODIAN, PRECLUDED BY LAW

The Insured has (incorrectly) alleged that Bernard Madoff was the "custodian" of a Plan asset (Complaint ¶ 16, Ex. B), because in certain circumstances "custodians" are treated as "trustees." Drawing every inference in favor of the plaintiff -- and setting aside that being a custodian of a plan asset is not the same thing as being a Plan Trustee[10]-- the allegation of a

---

[9] See, Canan, Michael, J., 8B West's Legal Forms, Retirement Plans § 7.3 (4th ed.) (2009).

[10] See 26 C.F.R. § 1.401(f)-1 (c) , which provides in pertinent part that the person holding a plan asset becomes the trustee of the asset, not the plan, as follows:

custodianship is not sufficient to transform Bernard Madoff into a "trustee".   As a matter of law, neither Bernard Madoff (nor any individual) could qualify as a "custodian", so as to become a trustee of a plan asset.  The law requires that such custodian be an institution: individual human beings do not qualify.

Custodial accounts may be held in a bank as defined in 26 U.S.C. 408(n) or by entities specially qualified by the Commissioner of the Internal Revenue Service.  See 26 U.S.C. § 401 (f)(2); 26 C.F.R. § 1.401(f)-1(b)(ii). The cited statute specifies that "the person holding the assets of such account...shall be treated as the trustee thereof. 26 U.S.C. § 401(f)(2).  The regulations promulgated pursuant to the aforesaid statute require that the applicant for custodianship demonstrate its qualification in the same manner required by 26 C.F.R.1.408-2(e).  Significantly, that regulation includes a continuity requirement which expressly foreclose the possibility of an individual serving as a "custodian".

> The applicant must assure the uninterrupted performance of its fiduciary duties notwithstanding the death or change of its owners.  Thus, for example, there must be sufficient diversity in the ownership of the applicant to ensure that the death or change of its owners will not interrupt the conduct of its business.  <u>Therefore, the applicant cannot be an individual</u>.

26 C.F.R. § 1.408-2(e)(2)(1)  (underscoring added).  Bernard Madoff could not successfully apply for, and therefore could not become a custodian of a Plan or Plan asset. It follows that he could not become a trustee by virtue of having been a custodian.

Like the other regulatory provisions governing the identification and acknowledgement of plan fiduciaries and trustees, custodial trustees appointed pursuant to 26 U.S.C. § 401(f)(2) are also required to file annual reports pursuant to sections 6033 [Returns by exempt organizations]

---

In addition, the person holding the assets of such account or holding such contract is treated as the trustee thereof. Accordingly, such person is required to file the returns described in sections 6033 and 6047 and to supply any other information which the trustee of a qualified trust is required to furnish.

and 6047 [Trustees and Insurance Companies]  in order to maintain the tax-deferred status of plan assets.  The plaintiff has declined to provide any such documents in support of their assertion that Madoff was a custodian or trustee within the contemplation of the law, or a Pan Trustee within the scope of the Bond.  Thus, even if Madoff could be considered a custodian, which he cannot, plaintiff has still failed to meet its burden.

## C. MUTUALLY EXCLUSIVE: AN INVESTMENT MANAGER CANNOT BE A TRUSTEE

The plaintiff also asserts that Bernard Madoff managed plan funds as an "investment manager" and a "trustee".[11] While it is evident that Madoff was one of the plaintiff's investment managers, that status precluded Madoff from being a Plan "trustee".  ERISA explicitly states that "[t]he term 'investment manager' means any fiduciary (**other than a trustee** or named fiduciary, as defined in section 1102(a)(2) of this title) - "(emphasis added). See 29 U.S.C. § 1002(38).

ERISA precludes investment managers from being trustees, because a trustee cannot delegate his fiduciary duty to manage the funds to himself as an investment manager and at the same time absolve himself from liability for his acts or omissions as an investment manager by referring to himself as a "trustee".  See generally, *Lowen v. Tower Asset Management, Inc.* 829 F.2d 1209, 1218 -1219 (2d. Cir., (NY) 1987).[12] The rationale for this principal is codified in 29 U.S.C.A. § 1105 (d), which provides:

---

[11] See Complaint (Mills Aff. Exhibit I) at ¶ 9.

[12]The United States Court of Appeals, Second Circuit, recognized and discussed the rationale embodied in  29 U.S.C.A. §§ 1103(a),1105 (d):

> ERISA was deliberately structured so that legal responsibility for management of ERISA plans would be clearly located. ERISA Section 1102(1) thus directs that every plan designate a "named fiduciary" with power "to control and manage" the plan. Congress included this requirement "so that responsibility for managing and operating the Plan-and liability for mismanagement-are focused with a degree of certainty." *Birmingham v. Sogen-Swiss Int'l Corp. Retirement*

d) Investment managers

(1) If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then, notwithstanding subsections (a)(2) and (3) and subsection (b) of this section, no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

(2) Nothing in this subsection shall relieve any trustee of any liability under this part for any act of such trustee.

*Id.*

Since the plaintiff admits that Madoff was its "investment manger", [13] as a matter of law, he could not simultaneously be a plan "trustee". Although the bond's definition of "employee" includes investment managers, it specifically excludes investment managers, who, like Madoff were independent contractors. *See, Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.,*104 F.3d 258 (9th Cir. (Cal.),1996). Accordingly, the complaint fails to state a claim upon which relief can be granted because, as matter of law, Madoff cannot be a Plan Trustee, and hence an "employee" as that term is defined in the Bond.

---

*Plan,* 718 F.2d 515, 522 (2d Cir.1983). The obligations of named fiduciaries with regard to their duty of care, however, can be reduced by the appointment of an investment manager under ERISA Section 402(c)(3). Under Section 405(d)(1), once such an appointment has been made, the trustees cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned. The plain intent of this statutory structure is to allow plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced.

*Lowen v. Tower Asset Management, Inc.* 829 F.2d at 1218 -1219 (2d. Cir.,(NY) 1987); see also, *Building Service 32B-J Health, Pension and Annuity Fund v. Vanderveer Estates Holding, LLC* 121 F.Supp.2d 750, 754, FN2 (S.D.N.Y.,2000).

[13] See Complaint (Mills Aff. Exhibit I) at ¶ 9-10

D. INDEPENDENT CONTRACTOR, NOT A COVERED "EMPLOYEE"

If Bernard Madoff in fact accepted and received any assets of the plaintiff's pension plan he may have automatically become a *de facto* fiduciary of that Plan.[14] He did not, however, become a Trustee of an Insured Plan, the only status whereby (as an independent contractor) he could have been afforded coverage under the Bond. See *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.,* 104 F.3d 258 (9th Cir. (Cal.), 1996) (investment advisor selected by pension plan was a *de facto* fiduciary, but was an independent contractor not afforded coverage under ERISA endorsement to fidelity policy).

The facts and circumstances of the Rosenbaum case are substantially similar to those before this Court in the matter at bar. The plaintiff in Rosenbaum, just as the plaintiff alleges here, invested plan assets with a third party alleged to have misappropriated the funds. In Rosenbaum, the funds were invested through Property Mortgage Company, Inc., which was managed by Stanley Glickman. Glickman was alleged to have complete discretion over investment of the plan's funds. Here, plaintiff similarly alleges its funds were invested with Madoff Securities, LLC, which was under the control of Bernard Madoff. Plaintiff likewise alleges that Madoff had complete discretion with respect to the investment of plaintiff's funds.

Under a definition of "employee" identical to the definition contained in the Travelers Bond, the plaintiff in Rosenbaum, as does the plaintiff here with respect to Madoff, argued that Glickman was covered as a trustee under the Bond's definition of "employee". The Court of Appeal for the Ninth Circuit squarely rejected Rosenbaum's contention. First the Ninth Circuit

---

[14] In accepting the delegation of a trust function from a trustee, an agent assumes a fiduciary role with fiduciary responsibilities. Thus, the agent has a duty to the trust and its beneficiaries to act with reasonable care in performing a delegated function *Arnone v. CA, Inc.,* 2009 WL 362304, 5 (S.D.N.Y., Feb 13, 2009). But that does not transform the agent into a trustee, but rather an ERISA fiduciary. See *Rosenbaum, supra.*.

16

noted that Glickman was not designated as a trustee in the plan. Second, the Ninth Circuit held that the facts alleged, which were virtually identically to the facts alleged at bar, at most, demonstrated that Glickman might be a fiduciary of the plan, but that since the terms "fiduciary" and "trustee" are not synonymous, even a finding that Glickman was a fiduciary would not establish coverage under the bond. The identical result should prevail here.

The Travelers Bond is limited in scope and application, it does not apply to anyone who might become an ERISA fiduciary, only to that certain specified group of easily identifiable (and therefore actuarially verifiable) individuals listed in the definition of Employee. *Rosenbaum*, *id.*, 104 F.3d at 262-,263 (affirming summary judgment in favor of insurer: notwithstanding that investor used by pension plan was an ERISA fiduciary, he was not a "covered individual" specified in "unambiguous" fidelity coverage, indistinguishable from the Bond herein).

In sum – assuming *arguendo*, that the plaintiff had adduced documentary proof sufficient to establish that Bernard Madoff became a fiduciary of the plaintiff's pension Plan – none of the roles that Bernard Madoff could have fulfilled as an independent contractor (*e.g.*, investment manager) qualified him to be a Plan Trustee – and therefore an "employee" within the meaning of the Travelers Bond. Since Madoff was not an employee, the dishonest acts attributed to him by plaintiff were not covered by the Travelers Bond, and the plaintiff's complaint fails to state a claim upon which relief can be granted.

POINT IIII

**PLAINTIFF'S FAILURE TO SUBMIT A PROOF OF LOSS OR SUPPORTING DOCUMENTATION TO ESTABLISH COVERAGE FOR BERNARD MADOFF AS A TRUSTEE WARRANTS DISMISSAL OF THE COMPLAINT**

Plaintiff insured failed to sign or swear to the proof of loss submitted in support of its claim, and more significantly, has failed (or refused) to provide fundamental documents

(requested on multiple occasions by Travelers) from which the Insurer could identify the named trustee(s) (if any) of the Schupak Group Defined Benefit Plan or the named fiduciaries authorized to appointee trustees of the Plan(s).

In the letters exchanged between plaintiff's counsel and Travelers' counsel in compliance with Rule III B of Judge Scheindlin's Individual Rules and Procedures applicable to pre-answer motions to dismiss (Exhibit "3" to the Mill Aff.), plaintiff's counsel argues that there is no contractual or legal requirement obligating plaintiff to produce the documents requested by Travelers in connection with Travelers' investigation of plaintiff's claim under the Bond.

To the contrary, it is well settled that an insurer has "the perfect right" to require the insured to provide proof of evidentiary facts necessary to establish coverage under the policy of insurance. *Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 240, 476 N.Y.S.2d 519, 521(1984). See N.Y.Ins.L. 3470(a)[15] Accordingly, New York courts have regularly and consistently enforced standard policy provisions requiring the insured to submit adequate proofs of loss. *Goodale v. Pioneer Ins. Co.*, 614 N.Y.S.2d 657 (3d Dept.1994) (proof of loss provision in policy was unambiguous, and insured's failure to submit signed and sworn proof of loss precluded recovery); *Nyasco Sports, Inc. v. Director, Federal Emergency Management Agency*, 561

---

[15] Section 3407(a) of New York Insurance Law, states in relevant part:

> The failure of any person insured against loss or damage to property under any contract of insurance, issued or delivered in this state or covering property located in this state, to furnish proofs of loss to the insurer or insurers as specified in such contract shall not invalidate or diminish any claim of such person insured under such contract, unless such insurer or insurers shall, after such loss or damage, give to such insured a written notice that it or they desire proofs of loss to be furnished by such insured to such insurer or insurers on a suitable blank form or forms. If the insured shall furnish proofs of loss within sixty days after the receipt of such notice, such insured shall be deemed to have complied with the provisions of such contract of insurance relating to the time within which proofs of loss are required.

N.Y. Ins. § 3407(a).

F.Supp. 64 (S.D.N.Y.,1983)(unsworn statement was insufficient to satisfy proof of loss requirement in commercial crime policy).

There can be no doubt that the insured's failure to provide documentary evidence (required by ERISA for the appointment of Plan Trustees) in support of its proof of loss – and its continuing refusal to provide such evidence (see Exhibit 3 to Mills Aff.) requires a finding that the insured did not satisfy General Condition 2 of the Bond in this case. *See Stradford v. Zurich Ins. Co.* 2002 WL 31819215, 4-6 (S.D.N.Y.,2002)(insured's failure to provide documents requested by the insurer is a breach of the "cooperation clause" precluding plaintiff from recovering under the policy); *see also Weissberg v. Royal Ins. Co.,* 240 A.D.2d 733, 734, 659 N.Y.S.2d 505 (2d. Dept. 1997)(holding that "the insureds' willful failure to provide material and relevant documents, is a material breach of the policy which bars recovery under the policy"); *see generally*, 4 N.Y.Prac. Comm. Litig.§ 60:10 (2d).

*See also, Saba Rug, Inc. v. Great American Ins. Companies,* 678 N.Y.S.2d 629(1st.Dept.,1998) (insured's submission to oral examination and swearing to transcript of initial interview with insurance adjuster did not satisfy insured's obligation to submit sworn proofs of loss). *Maleh v. New York Prop. Ins. Underwriting Assn.,* 64 N.Y.2d 613, 485 N.Y.S.2d 32 (1984) (submission of other documentation and participation in oral examinations did not discharge obligation to submit sworn proofs of loss); *Vena v. State Farm Fire and Cas. Co.,* 610 N.Y.S.2d 410(3d Dept.,1994) (insureds' failure to file sworn proof of loss statement as required under policy, was absolute defense to action on policy, notwithstanding insureds' contention that documents they did submit "substantially complied" with policy's requirement); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 261 F.Supp.2d 293(S.D.N.Y.,2003)(because of the importance to virtually every insurance dispute of a formal proof of loss, substitutes therefore

will not lightly be entertained); *Kehoe v. Travelers Ins. Co.*, 2009 WL 87589 (NDNY 2009). See also, *Unger v. Liberty Mut. Ins. Co.*, 849 F.Supp. 839, (E.D.N.Y.,1994) (insured's amended complaint in action against insurer to recover property damages was not sufficient for meeting proof of loss requirement of flood policy); See also, *Moore v. INA Life Ins. Co. of New York*, 66 F.Supp.2d 378, 387-89 (E.D.N.Y.,1999)(insured's failure to produce due proof to support claim for coverage under ERISA regulated insurance plan warranted denial of coverage).  See also, *Chaddick v. Allstate Ins. Co.*, Slip Copy, 2009 WL 455183 (W.D.La. 2009) (insured's failure to submit adequate proof of loss required by FEMA sponsored WYO flood insurance policy required summary judgment dismissing complaint against insurer – collecting cases at n.20)

    As can be seen above, strict compliance with proof of loss requirements in policies issued pursuant to federal programs[16] is required, and cannot be waived.[17] Accordingly, the plaintiff's

---

[16] Under 29 U.S.C. § 1112(a), ERISA fiduciaries and fund handlers must, with some exceptions, be bonded:

> (a) **Requisite bonding of plan officials.** Every fiduciary of an employee benefit plan and every person who handles funds or other property of such a plan (hereafter in this section referred to as a "plan official") shall be bonded as provided in this section;....

Such bond shall provide protection to the plan against loss by reason of acts of fraud or dishonesty on the part of the plan official, directly or through connivance with others. *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.*, 104 F3d 258, 262 (9th Cir. 1996)  Pursuant to that requirement, insurance companies offer coverage against loss due to the defalcations of specified plan officials including plan trustees and plan fiduciaries, but the obligation to secure compliant coverage lies with plan fiduciaries, not the insurer. , *Id.*104 F.3d 258 (9th Cir. 1996).

[17] *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1 (1947); *Suopys v. Omaha Property & Cas.*, 404 F.3d 805, 810 (3d Cir.2005); *Dawkins v. Witt*, 318 F.3d 606 (4th Cir.2003); *Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1318 (11th Cir.2003); *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733-34 (8th Cir.2001); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir.2000); *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir.1998); *M.D. Phelps v. FEMA*, 785 F.2d 13 (1st Cir.1986). Correspondingly, courts have resoundingly rejected the notion that "substantial compliance" with the proof of loss requirement suffices for recovery under a SFIP. *See, e.g., Mancini,* 428 F.3d at 734; *Flick,* 205 F.3d at 390; *Gowland,* 143 F.3d at 954. *Kehoe v. Travelers*, supra at *2.

failure (or refusal) to submit a signed, sworn and factually adequate Proof of Loss warrants dismissal of the complaint as a matter of law.

Moreover, plaintiff's consistent and willful refusal to provide documents requested by Travelers during its investigation of this claim, as required of the plaintiff under § E.2.d, constitutes a breach of the "cooperation clause" (§ E.2. c. of the Bond) and such breach precludes plaintiffs from recovering under the Bond. *See Stradford v. Zurich Ins. Co.* 2002 WL 31819215, 4-6 (S.D.N.Y.,2002); *Weissberg v. Royal Ins. Co.,* 240 A.D.2d 733, 734, 659 N.Y.S.2d 505 (2d. Dept. 1997).

## CONCLUSION

For the foregoing reasons, the plaintiff's complaint must be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: New York, New York
        January 26, 2010

> Respectfully submitted,
>
> McElroy, Deutsch, Mulvaney & Carpenter, LLP
>
> By: s/ Richard S. Mills
>     Richard S. Mills (0206)
>     Carol A. Pisano (1076)
>     *Attorneys for Defendant*
>     *Travelers Casualty and Surety Company of America*
>     Wall Street Plaza
>     88 Pine Street, 24th Floor
>     New York, New York 10005
>     Tel. No.: (212) 483-9490
>     Fax: (212) 483-9129
>     rmills@mdmc-law.com
>     cpisano@mdmc-law.com

TO:    Barry I. Slotnick, Esq.
       H. Marc Tepper, Esq.

21

Kristi A. Davidson, Esq.
Buchanan Ingersoll & Rooney PC
620 Eight Ave., 23rd Floor
New York, New York, 10018