UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCHUPAK GROUP, INC., SPONSOR
FOR SCHUPAK RETIREMENT PLAN
AND PROFIT SHARING PLAN

                Plaintiff,

    -against-

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

             Defendant.

CIVIL ACTION NO.: 10-cv-0209 (SAS)(FM)

---

**MEMORANDUM OF LAW OF PLAINTIFF SCHUPAK GROUP, INC., SPONSOR FOR SCHUPAK RETIREMENT PLAN AND PROFIT SHARING PLAN IN OPPOSITION TO THE MOTION OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA TO DISMISS THE COMPLAINT**

**BUCHANAN INGERSOLL & ROONEY PC**
Barry I. Slotnick
H. Marc Tepper
Kristi A. Davidson
620 Eighth Ave., 23rd Floor
New York, New York 10018
Tel: (212) 440-4400

*Attorneys for Plaintiff*
Schupak Group, Inc. Sponsor for Schupak
Retirement Plan and Profit Sharing Plan

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................ii

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS..........................................................................................2

ARGUMENT .............................................................................................................5

I.    Legal Standard .................................................................................................5

II.   Schupak Complied with the Requirements Under the Bond for the Submission of Its
      Claim to Travelers .......................................................................................6

  A.  Travelers Acknowledged and Accepted the Proof of Loss as Complete .......................6

  B.  Schupak Complied with Its Obligations Under the Bond and Cooperated with
      Travelers ..................................................................................................7

  C.  Travelers Improperly Relies on Demands for "Required" Documents Beyond What is
      Provided Under the Terms of the Bond................................................................11

III.  The Complaint Alleges that Madoff Was an Investment Trustee of the Plans .................14

  A. Madoff's Status as a "Custodian" of Plan Assets is Irrelevant to Determine Coverage
      Under the Bond..........................................................................................14

  B. Madoff's Status as Investment Manager is Irrelevant to Determine Coverage Under the
      Bond .....................................................................................................15

  C.  Madoff's Status as "Independent Contractor" Is Travelers' Allegation Not Schupak's
      and Is Not Part of the Complaint ...................................................................17

IV.   The Undefined Term "Trustee" Should Be Given Its Ordinary Meaning.........................18

CONCLUSION .......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Agway, Inc. v. Travelers Indemnity Co.,*
    1993 WL 771008 (N.D.N.Y. Dec, 6, 1993) ......................................................... 18

*Allen v. WestPoint-Pepperell, Inc.,*
    945 F.2d 40 (2d Cir.1991) ............................................................................... 6

*Ashcroft v. Iqbal,*
    --- U.S. ----, ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................. 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................... 5

*Caporino v. Travelers Ins. Co.,*
    62 N.Y.2d 234, 476 N.Y.S.2d 519 (N.Y. 1984) ...................................... 8, 10

*Chaddick v. Allstate Ins. Co.,*
    2009 WL 455183 (W.D.La. Feb. 23, 2009) ........................................... 8, 9

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ............................................................................ 6

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208
    (1992) ........................................................................................................... 6

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ............................................................................... 6

*Goodale v. Pioneer Ins. Co.,*
    206 A.D.2d 725, 614 N.Y.S.2d 657 (3d Dept., 1994) ................................ 8, 9

*Italian Designer Import Outlet, Inc. v. New York Central Mutual Fire Ins. Co.,*
    891 N.Y.S.2d 260 (N.Y.S., Kings Cty 2009) ............................................ 20

*Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.,*
    104 F.3d 258 (9th Cir. 1996) ................................................................. 16, 17

*Kehoe v. Travelers Ins. Co.,*
    2009 WL 87589 (N.D.N.Y. Jan. 12, 2009) .............................................. 8, 9

*Lowen v. Tower Asset Management, Inc.,*
    829 F.2d 1209 (2d Cir. 1987) .......................................................................... 16

*Maleh v. New York Prop. Ins. Underwriting Assn.,*
    64 N.Y.2d 613, 474 N.E.2d 240 (N.Y. 1984) ............................................... 8

*Moore v. INA Life Ins. Co. of New York,*
    66 F. Supp. 2d 378 (E.D.N.Y. 1999) ............................................... 8, 9, 10

*Olin Corp. v. Certain Underwriters at Lloyd's London and London Market Ins. Cos.,*
    2009 WL 2981885 (2d Cir. Sept. 18, 2009) ............................................. 19

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ............................................................ 6

*Porco v. Lexington Ins. Co.*,
   2009 WL 5171735 (S.D.N.Y. Dec. 30, 2009) ........................................ 19

*Saba Rug, Inc. v. Great American Ins. Companies*,
   254 A.D.2d 107, 678 N.Y.S. 2d 629 (1st Dept., 1998) ........................ 8, 9

*Stradford v. Zurich Ins. Co.*,
   2002 WL 31819215 (S.D.N.Y. Dec. 13, 2002) .................................... 8, 10

*Thomas v. Westchester County Health Care Corp.*
   232 F.Supp.2d 273 (S.D.N.Y. 2002) ................................................... 6

*Unger v. Liberty Mut. Ins. Co.*,
   849 F. Supp. 839 (E.D.N.Y. 1994) .................................................... 8, 9

*Vena v. State Farm Fire and Casualty Co.*,
   203 A.D.2d 790, 610 N.Y.S.2d 410 (3d Dept., 1994) ......................... 8, 9

*Weissberg v. Royal Ins. Co.*,
   240 A.D.2d 733, 659 N.Y.S.2d 505 (2d Dept., 1997) ....................... 8, 11

## Statutes

29 U.S.C. § 1103(a) ............................................................................... 12

## Other Authorities

Merriam-Webster Online 2010 (15 February, 2010)
   (http://www.merriam-webster.com/dictionary/trustee) ......................... 19

## Rules

Fed. R. Civ. P. Rule 10(c) ..................................................................... 6
Fed. R. Civ. P. Rule12( b)( 6) ................................................................ 5
Fed. R. Civ. P. Rule 8 ........................................................................... 15

## INTRODUCTION

Plaintiff, Schupak Group, Inc., sponsor for the Schupak Retirement Plan and Profit Sharing Plan ("Schupak") brought this action to recover funds entrusted to Bernard Madoff ("Madoff") as a trustee with regard to Schupak's Retirement Plan and Profit Sharing Plan (the "Plans"). Schupak insured its Plan funds through defendant Travelers Casualty and Surety Company of America ("Travelers") under Bond 104071998 (the "Bond"). The Bond specifically covers losses incurred as a result of dishonest or fraudulent acts of an "employee" -- a defined term under the Bond that includes trustees. Despite prompt and timely notice to Travelers of the loss suffered as a result of the securities fraud of its trustee Madoff and the provision of a completed Proof of Loss as well as the supporting documentation in Schupak's possession, Travelers refused to provide coverage to Schupak in breach of its obligations under the Bond.

It is apparent from the correspondence attached to the Complaint and the arguments raised in the present motion that Travelers preferred to treat its insured, from whom it collected all premiums due and owing, as an adversary from the beginning of the claim process, rather than perform its own duty to investigate further in the event that Schupak's submission left questions unanswered from Travelers' perspective.

In its motion to dismiss, Travelers repeats the same unsupported mantra it repeated throughout its correspondence with Schupak as attached to the Complaint in this matter -- Schupak is not entitled coverage on the basis that Schupak has not provided Travelers with specific documents that are not listed as prerequisites to coverage under the Bond and through references to definitions set out in statutes and regulations not incorporated by reference in the Bond. Even as Travelers unreasonably complains about the lack of certain, specific documents before it would consider covering Schupak's loss, Travelers never once requested an opportunity

to access Schupak's premises, books or records, which access Schupak was required to permit under the Bond. Any lack of documentation, therefore, is attributable to Travelers' own lack of investigation as provided for under the terms of the Bond. In short, Travelers is focused on every possible excuse for failing to provide coverage it can find outside the actual provisions of the Bond, but completely ignores its own duties as set out in the Bond. Schupak, however, is seeking recovery under the terms of the Bond itself and the language provided therein. It is the Bond that formed and defined the parties' reciprocal duties and obligations. Travelers should be bound by the terms of the Bond and its motion to dismiss based on purported "requirements" outside the four corners of the Bond should be denied.

## STATEMENT OF FACTS

On December 21, 2009, plaintiff Schupak brought this action to recover funds entrusted to Madoff as a trustee with regard to Schupak's Plans. Under the Plans, Schupak invested funds through a partnership, FGLS, LLC, which was created specifically and solely to facilitate the relationship between Schupak and Madoff. Madoff, acting in the role of investment trustee of the Plans, had full trading discretion, as delegated to Madoff by the Plan Trustee.

Effective November 16, 2003, Schupak obtained insurance coverage for the Plans from defendant Travelers under the Bond. The Bond provides coverage for losses sustained as a direct result of dishonest or fraudulent acts of an "employee" as that term is defined under the Bond. Specifically, the Bond provides:

> A.    COVERAGE
> We [Travelers] will pay only for the loss of "property" sustained by you resulting directly from dishonest or fraudulent acts committed by an "*employee*" acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the "employee" with the manifest interest:
> 1.        to cause you to sustain such loss; and

2.      to obtain financial benefit (other than employee benefits
earned in the normal course of employment, including: salaries,
commissions, fees, bonuses, promotions, awards, profit sharing or
pensions) for the "employee" or another person or entity

Subject to the Loss Sustained During Prior Insurance condition, we
will pay only for that loss you sustain through acts committed
during the Policy Period identified in Item 3, and discovered no
later than one year from the end of the Policy Period.

Bond, § A (emphasis added).  Among those covered by the Bond definition of "employee" are

trustees.

C.      GENERAL DEFINITIONS.
1.      "Employee" means any natural person who is:
a.      A *trustee*, an officer, employee, administrator or a
manager, except an administrator or a manager who is an
independent contractor, of an Employee Welfare or Pension
Benefit Plan (hereafter called Insured Plan) covered under this
Policy; and
b.      Your director or *trustee* while that person is handling
Funds or other property of any Insured Plan covered under this
Policy.
2.      "Occurrence" means all loss caused by, or involving, one
"employee" or more than one "employee," whether the result of a
single act or series of acts.

Bond, § C (emphasis added).  The term "trustee" is not defined in the Bond, nor are any legal or

technical definitions of "trustee" incorporated by reference in the Bond.  Accordingly, the

undefined term "trustee" is subject to the plain and ordinary meaning of that term, a meaning

relied on by Schupak in delegating authority to Madoff as a trustee under the Bond and which

plainly fits Madoff's role as investment trustee of Plan funds with full trading discretion.  In

keeping with the plain meaning of the term "trustee," the Bond does not limit coverage to

trustees specifically named under the covered Plans or require the trustee to be a full-time W-2

hire of the insured.

In the event that Schupak suffered a covered loss under the Bond, Schupak had the following duties:

> E.      General Conditions
> ***
> 2.      Your Duties in the Event of Loss:  After you discover a loss or situation that may result in loss of "property" you must:
> a.      Notify us as soon as possible
> b.      Give us a detailed, sworn proof of loss within 120 days;
> c.      Cooperate with us in the investigation and settlement of any claim; and
> d.      Permit us access to your premises and your books and records.

Bond, § E.

On or around December 11, 2008, the Plans suffered losses as a result of Madoff's securities fraud.  Madoff's misdeeds are admitted and have been much-publicized.  Schupak promptly notified Travelers of the loss it suffered as a result of Madoff's dishonest and fraudulent acts and submitted its Proof of Loss on January 29, 2009.  Travelers acknowledged receipt of Schupak's completed Proof of Loss on February 26, 2009.  In its February 26th letter, Travelers began its pattern of manufacturing excuses for denying coverage to Schupak.  Without conducting any investigation into Schupak's claim and without any of the documents Travelers now claims are required for it to determine Madoff's status under the Plans, Travelers suggested Schupak's loss would not be covered under the Bond because Madoff was an "independent contractor."  Independent contractors, who are managers and administrators, are specifically excepted from coverage under the Bond.  Bond, § C.  Independent contractors, who are trustees, however, are not listed in the independent contractor exception under the Bond and are therefore covered by the Bond.  *Id.*

On April 10, 2009, Travelers began demanding plan or trust instruments naming Madoff as a trustee of the Plans, and again without the benefit of the supposedly required documents,

asserted that Madoff was now a manager, broker or a dealer, but not a trustee.  Thereafter, on April 29, 2009 and May 18, 2009, Travelers continued to demand specific documents not listed in the Bond, referred Schupak to Bond terms related to filing suit against Travelers and reserving its rights and defenses under the law as it apparently concluded its "investigation" and wrongfully denied Schupak coverage for Plans' losses under the Bond.  This lawsuit resulted from Travelers' wrongful denial of coverage.

## ARGUMENT

### I.    Legal Standard

The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and, more recently, *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), articulated the standards that apply to Defendants' motion to dismiss pursuant to Rule12( b)( 6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must accept all factual allegations as true, but this requirement does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific inquiry" that requires application of "judicial experience and common sense." *Id.*  Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  Schupak's Complaint

meets this standard.

In deciding a motion to dismiss, the Court may consider documents attached as exhibits to the complaint or incorporated into the complaint by reference, documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See* Fed.R.Civ.P. 10(c); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir.1996); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir.1991), *cert. denied,*503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Thomas v. Westchester County Health Care Corp.*, 232 F.Supp.2d 273, 275 (S.D.N.Y. 2002). When documents are integral, known of and possessed by the plaintiff, and there is no dispute as to their authenticity, the Court may consider them on a motion to dismiss. *Thomas,* 232 F.Supp.2d at 276 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 & n. 4 (9th Cir.1998); *Cortec,* 949 F.2d at 48).

II.    **Schupak Complied with the Requirements Under the Bond for the Submission of Its Claim to Travelers**

A.    **Travelers Acknowledged and Accepted the Proof of Loss as Complete**

Travelers for the first time since being notified on January 29, 2009 by Schupak of its loss sustained as the result of the securities fraud of Madoff, claims that the Proof of Loss Schupak submitted on Travelers' own form is invalid because it was not signed. Exhibit 1 to Davidson Affidavit. Travelers never advised Schupak at any time over the last year, despite repeated exchanges of correspondence on the subject of its Proof of Loss, that there was anything wrong with the Proof of Loss form submitted by Schupak. In fact, in its first correspondence to Schupak after submission of the Proof of Loss, Travelers "acknowledged receipt of a ***completed*** Proof of Loss" from Schupak and represented that it would "now commence our investigation

6

and loss verification into this claim." Exhibit 2 to Davidson Affidavit (emphasis added). Accordingly, Travelers' acknowledgement of receipt and acceptance of what Travelers itself characterized as a "completed Proof of Loss" necessitates that Travelers waived any objection to any purported defect in the Proof of Loss as submitted.

**B.    Schupak Complied with Its Obligations Under the Bond and Cooperated with Travelers**

Travelers' argument that Schupak willfully failed or refused to provide documents required under the terms of the Bond misses the point. Schupak cooperated with Travelers and this cooperation included submitting documents in Schupak's possession that demonstrated Madoff's status as an investment trustee to Travelers. That Travelers was not satisfied with these documents and instead demanded additional documents not listed as required under the terms of the Bond and which Schupak did not have or in which Madoff is not named does not amount to a breach of the terms of the Bond. Travelers also conveniently overlooks its own duty under the terms of the Bond to conduct an investigation, which could include, accessing Schupak's premises, books or records. Schupak was obligated to cooperate with Travelers, not to manufacture documents that do not exist or in which Madoff is not named.

Travelers cites numerous cases for the proposition that Schupak's alleged failure to provide documentary evidence in support of its proof of loss or to sign the proof of loss requires dismissal of Schupak's Complaint. Travelers' Memorandum of Law in Support of Motion to Dismiss ("Memo"), pp. 17-21. These cases are inapposite. First, all but two of the cases cited by Travelers are opinions on summary judgment or following a bench trial and therefore after the parties conducted discovery and developed a factual record, not on a motion to dismiss.[1] *See*

_____

[1] *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293 (S.D.N.Y. 2003) was decided on a motion to dismiss that was granted in part as to two breach of contract claims that were unripe and denied in part as to two declaratory judgment claims. The breach of contract claims were dismissed as unripe because the claimant

*Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 476 N.Y.S.2d 519 (N.Y. 1984) (ruling on

summary judgment); *Goodale v. Pioneer Ins. Co.*, 206 A.D.2d 725m 614 N.Y.S.2d 657 (3d

Dept. 1994) (same); *Stradford v. Zurich Ins. Co.*, 2002 WL 31819215 (S.D.N.Y. Dec. 13, 2002)

(same); *Weissberg v. Royal Ins. Co.*, 240 A.D.2d 733, 659 N.Y.S.2d 505 (2d Dept., 1997)

(same); *Saba Rug, Inc. v. Great American Ins. Companies*, 254 A.D.2d 107, 678 N.Y.S. 2d 629

(1st Dept., 1998) (same); *Maleh v. New York Prop. Ins. Underwriting Assn.*, 64 N.Y.2d 613, 474

N.E.2d 240 (N.Y. 1984) (same); *Vena v. State Farm Fire and Casualty Co.*, 203 A.D.2d 790,

610 N.Y.S.2d 410 (3d Dept., 1994) (same); *Kehoe v. Travelers Ins. Co.*, 2009 WL 87589

(N.D.N.Y. Jan. 12, 2009) (same); *Unger v. Liberty Mut. Ins. Co.*, 849 F. Supp. 839 (E.D.N.Y.

1994) (same); *Moore v. INA Life Ins. Co. of New York*, 66 F. Supp. 2d 378 (E.D.N.Y. 1999)

(same); *Chaddick v. Allstate Ins. Co.*, 2009 WL 455183 (W.D.La. Feb. 23, 2009) (same).

Second, each of the cases relied on by Travelers contains factually distinguishable

circumstances that make those cases inapplicable here.  Travelers cites three cases dealing with

federal flood insurance program claims, each of which in turn relies on other decisions dealing

with federal flood insurance program claims.  *Kehoe*, 2009 WL 87589 at *1; *Unger*, 849 F.

Supp. at 840; *Chaddick*, 2009 WL 455183 at*1.  Schupak's claim has nothing to do with the

federal flood insurance programs discussed in those cases or the law applied therein.  Moreover,

in *Kehoe*, the claimant failed to submit a proof of loss at all, and instead relied on a "report

---

never submitted a proof of loss at all and thus had yet to activate the insurer's duty to make a coverage
determination. *Id.* at 295. Here, Schupak submitted and Travelers accepted as complete a proof of loss.
    *Nyasco Sports, Inc. v. Director, Federal Emergency Management Agency*, was decided on what the district
court characterized as "motion to dismiss" shortly before trial and following an evidentiary hearing, when defendant,
FEMA, demonstrated that the insured under a federal crime insurance program, wholly different from the Bond at
issue in Schupak's Complaint, not only failed to submit a proof of loss, but also misrepresented its gross receipts to
the federal government in its insurance application. Moreover, Travelers misstated the holding of this case in its
Memorandum (Memo. pp. 18-19) because the commercial crime policy claim was dismissed without prejudice after
the district court resolved all federal claims and there was no diversity jurisdiction, making the commercial crime
policy claim a matter of purely state law, not because of any proof of loss issue. *Nyasco Sports, Inc. v. Director,
Federal Emergency Management Agency*, 561 F.Supp. 864, 871 (S.D.N.Y. 1983).

submitted by his engineer and constant communication and writings by email and letter to the insurer." *Kehoe*, 2009 WL 87589 at *2. Schupak submitted a proof of loss that was acknowledged as "completed" by Travelers. Similarly, in *Unger*, the claimant failed to submit a proof of loss listing the contents claimed to be damaged in the flood. *Unger*, 849 F. Supp. at 846. Schupak submitted a proof of loss setting out the covered investments as Travelers acknowledged.

In *Chaddick*, despite numerous requests by the insurer, the claimant flatly *refused* to sign a proof of loss. *Chaddick*, 2009 WL 455183 at *4-5. Here, Travelers never raised the issue of Schupak's unsigned proof of loss until the instant motion, and this, in contradiction of Travelers' express acknowledgement of a "completed" proof of loss. Schupak was never requested to sign the proof of loss by Travelers at any point. *Goodale*, *Vena*, and *Saba Rug* are three more cases where the insurer requested a signed proof of loss and the claimant failed to comply. *See Goodale*, 206 A.D.2d at 725, 614 N.Y.S.2d at 657; *Vena*, 203 A.D.2d at 790-91, 610 N.Y.S.2d at 410; *Saba Rug*, 254 A.D.2d at 107, 678 N.Y.S.2d at 629. Again, Travelers never requested a signed proof of loss and instead acknowledged that Schupak's proof of loss was "completed."

In *Moore*, another case relied on by Travelers, the claimant submitted a claim for injuries sustained in an alleged taxicab accident, but failed to provide any proof beyond his own account of the accident. *Moore*, 66 F. Supp. 2d at 388. Notably, in *Moore* the insurer actually conducted an investigation into the claim and discovered that the cab the claimant alleged he was injured in had not been in service for nearly three years prior to the alleged accident after interviewing the taxicab's former owner and operator. *Id.* Interestingly, however, the *Moore* court also noted that in evaluating whether a claim was covered where, as here, the "policy gives little direction on how the claimant is to demonstrate to [the insurer] CIGNA" that he should be

covered, "the inquiry should center on the information provided by [the claimant] Moore to CIGNA, and whether such information could be verified. The inquiry therefore relies on what was available, rather than what was not." *Id.* at 386-7. Accordingly, *Moore* stands for the proposition that an insurer evaluating whether a loss ought to be covered must focus on the documentation submitted, then follow up as necessary with investigation, rather than the fixating only on the documentation the insurer lacks. Here, Travelers, unlike the insurer in *Moore*, never even undertook an investigation beyond demanding specific documents not named in the Bond.

Next, Travelers relies on a series of cases where the insurance policies at issue actually appear to have required specific forms of proof of the claimed loss, unlike the Bond at issue in this case. In *Caporino*, the claimant failed to supply evidence that her husband died from violent or accidental bodily injuries as required under the policy. *Caporino*, 62 N.Y.2d at 238-40. The policy by its express terms required a showing that "there is a visible contusion or wound on the exterior of the body" and the claimant failed to make such a showing. *Id.* Here, the Bond does not require specific forms of proof as did the policy in *Caporino*. Accordingly, Travelers' denial of Schupak's claim on the ground that Schupak did not provide specific documents that were not listed in the Bond is actually undermined by this case.

In *Stradford*, the claimant simply refused to appear for the continuation of his oral examination based on the claim that the insurer had already determined to reject his claim, even though the insurer had made a partial payment to the insured already and specifically stated that its desire to continue his oral examination "should not be construed as a... denial of liability under the Policy." *Stradford*, 2002 WL 31819215 at *5. Once again, Travelers cited a case where the insurance company was proactively investigating its insured's claim and the insured inexplicably refused to cooperate. Those are not the facts of this case as alleged in the

Complaint; Schupak cooperated by supplying the relevant documents it had and Travelers never

sought to access Schupak's books and records as was its right under the Bond.

The *Weissberg* case cited by Travelers is even more off point.  In that case, the claimants'

home suffered a suspicious fire after they had filed for bankruptcy and they were on the verge of

losing their home at a foreclosure sale.  *Weissberg*, 240 A.D.2d at 734, 659 N.Y.S.2d 505.  The

claimants refused to cooperate with the insurer's investigation by refusing to produce their

college-age son for oral examination or provide his current address, even though he had been in

the home several hours before the fire broke out, or to provide tax returns.  *Id.*  In this case,

Travelers has not sought to question anyone, nor are there any suspicious circumstances

surrounding this claim such as there were in *Weissberg*.

**C.     Travelers Improperly Relies on Demands for "Required" Documents Beyond What is Provided Under the Terms of the Bond**

Travelers' entire argument is based on a supposed failure to supply specific documents to

Travelers as part of the Proof of Loss without regard to whether those documents actually exist

or are required under the terms of the Bond.  Schupak's claim, by contrast, is based on the

language of the Bond, which formed the agreement between the parties and their reciprocal

duties and obligations.

The Bond lays out the following duties of Schupak in submitting its claim:

> E.     General Conditions
> ***
> 2.     Your Duties in the Event of Loss:  After you discover a loss or situation that may result in loss of "property" you must:
> a.     Notify us as soon as possible
> b.     Give us a detailed, sworn proof of loss within 120 days;
> c.     Cooperate with us in the investigation and settlement of any claim; and
> d.     Permit us access to your premises and your books and records.

Bond, § E.  Notably, there is not one single specific document listed as a prerequisite to coverage, only a general duty to "cooperate" with Travelers "in the investigation and settlement of any claim; and to [p]ermit [Travelers] access" to Schupak's offices and records.  *Id.*  Travelers has utterly failed to conduct any investigation beyond demanding certain documents it believes ought to exist.

Travelers argument tellingly begins by claiming that "[*o*]*rdinarily* the assets of pension and profit sharing plans must be held in a trust created or organized in the United States," and that "[t]he trust is *typically* established pursuant to a written trust agreement."  Memo. pp. 9-10.  Travelers' argument, therefore, is admittedly based on documents it believes are "ordinarily" or "typically" available, but not necessarily or always available to identify trustees under the Plans.  Travelers then attempts to transform what is ordinary and typical into mandatory prerequisites to coverage without any basis in law or fact.  Indeed, Travelers' own statutory citations contradict its claims.

ERISA § 403(a), as cited by Travelers, plainly provides that "[s]uch trustee or trustees shall be *either* named in the trust instrument *or* in the plan instrument described in section 1102(a) of this title *or* appointed by a person who is a named fiduciary...."  29 U.S.C. § 1103(a).  Travelers blithely ignores that there are three different procedures provided for naming a plan trustee, including one wherein the trustee is *not* named in either a trust instrument or the plan instrument.  Instead, Travelers insists that Schupak must have a trust or plan instrument in its possession naming Madoff as a trustee and provide that document to Travelers or else Schupak's claim for coverage must be denied.  This supposed "requirement" is stated nowhere in the Bond, nor is it provided for under ERISA.

Travelers next insists that Schupak was also required to provide it with IRS Form 5500, including Schedules C and P, as evidence of Madoff's status as a trustee under the Plans. Memo at p. 11. This argument again ignores the fact that there is no requirement under the Bond stating that Schupak must provide this specific document in order to obtain coverage.

Travelers' additional arguments regarding whether the Plans' assets are held in trust as required under ERISA and the LMRA is a red herring. There is nothing in the Complaint to suggest that Schupak has failed to hold the Plans' assets in trust and this question is therefore irrelevant in determining the present motion to dismiss because it is outside the four corners of the Complaint and its attached exhibits. Travelers can pursue this avenue of inquiry in discovery if necessary.

At its essence, Travelers entire argument boils down to this: "[t]he plaintiff has declined Travelers' request to provide either the plan documents or the trust instrument, in support of its proof of loss" and on this basis alone Travelers feels justified in denying coverage under the Bond. Memo., at p. 11. This argument simply fails to acknowledge that the terms of the Bond are not nearly as specific or harsh as Travelers' interpretation of those terms. Schupak was only obligated to "promptly notify" Travelers of its loss, to submit a "detailed Proof of Loss," to "cooperate" with Travelers' "investigation," and to allow Travelers access to Schupak's "premises and your books and records." Bond, §E, ¶2.

Travelers' "investigation" apparently consisted of nothing more than demands for specific documents, not specifically required under the terms of the Bond, naming Madoff as trustee and writing letters advising Schupak of all the exceptions to coverage Travelers would like to invoke in lieu of providing the coverage it owed to Schupak. Travelers never once requested, suggested or even hinted that it wished to exercise its option to gain access to

Schupak's premises, books or records as part of its "investigation." Schupak for its part promptly notified Travelers of its loss, submitted a completed Proof of Loss as acknowledged by Travelers and cooperated with Travelers to the extent it was able by providing the documents it had in its possession demonstrating Madoff's status as investment trustee under the Plans. The Bond places the duty to investigate squarely on Travelers and only a duty to cooperate with such investigation on Schupak. *Id.* The fact that Travelers failed or refused to conduct its own investigation is attributable to Travelers alone and does not serve to justify a denial of coverage to Schupak.

## III.    The Complaint Alleges that Madoff Was an Investment Trustee of the Plans

For a motion based primarily on the notion that Schupak failed to provide Travelers with enough information to determine Madoff's status with respect to the Plans, Travelers spends a curious amount of time in its Memorandum arguing in conclusory fashion that Madoff is definitely an independent contractor, a fiduciary, and an investment manager but he is not a custodian or a trustee -- indeed Travelers appears willing to accept any label applied to Madoff so long as the result is that he is not a covered employee under the Bond. Although almost none of Travelers' claims are based on the allegations in the Complaint, these arguments demonstrate how little information Travelers requires to determine who is not covered and stand in stark contrast to the specific documentation Travelers demands before it will entertain the notion that Madoff was an investment trustee.

### A.    Madoff's Status as a "Custodian" of Plan Assets is Irrelevant to Determine Coverage Under the Bond

Travelers first claims that Madoff is not a custodian because he is an individual human being. Taking the allegations of the Complaint as true for purposes of the present motion to dismiss, it is apparent that whether Madoff was a custodian is not the point because Schupak has

not alleged coverage under the Bond on the basis of Madoff's status as a custodian, but rather based on his status as an investment trustee. Accordingly, the relevant question is whether Schupak adequately alleged that Madoff was an investment trustee such that he could be covered as an "employee" under the Bond. Trustees are plainly included within the definition of "employee" under the terms of the Bond and Schupak has alleged Madoff's status as a trustee in accordance with Rule 8's requirements.

In any event, Travelers' custodian argument is based on regulations promulgated to govern custodial accounts under the Internal Revenue Code, Travelers reasons Madoff cannot be a custodian of the Plans' assets because he is not an institution. Memo at pp.12-13. Travelers fails to connect these regulations and the definitions and limitations set forth therein to the language of the Bond where neither the term "custodian" or "trustee" are defined and the regulations relied on by Travelers are not incorporated.

### B.  Madoff's Status as Investment Manager is Irrelevant to Determine Coverage Under the Bond

Travelers' next claims that Madoff clearly was an investment manager and as such he could not at the same be a trustee under the Bond. To support this claim, Travelers again cites definitions that do not appear and were not incorporated by reference in the Bond. Specifically, Travelers cites to an ERISA definition of an "investment manager" which excludes trustees. If Travelers wished to incorporate this definition in its Bond, it very easily could have. Travelers did not do so and cannot retroactively insert definitions it now prefers in an attempt to justify its unjustified denial of coverage. Schupak agreed to and relied on the language in the Bond in naming Madoff the investment trustee for the Plans. The Bond does not limit who can and cannot be a trustee under the Bond in the way that Travelers asserts in its memorandum of law.

In addition, the case law relied upon by Travelers is readily distinguishable. Travelers cites *Lowen v. Tower Asset Management, Inc.* for the proposition that an investment manager cannot be a trustee under ERISA. This case is factually inapposite because it involves a claim of ERISA violations not at issue in this insurance coverage case, and in any event, the plan documents at issue in *Lowen* plainly incorporated ERISA provisions and definitions not incorporated in the Bond in this case. *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1218-19 (2d Cir. 1987) ("The agreements in question explicitly incorporated numerous ERISA statutory provisions and must be interpreted in light of ERISA's structure and purposes."). Travelers would clearly prefer that the Bond definitions be augmented by ERISA provisions, but Travelers did not incorporate those provisions into the Bond as did the defendant in *Lowen*.

Travelers also relies on *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.*, to support its argument that investment managers who are independent contractors are excluded from coverage under the Bond. Memo at p. 15 (citing *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.*, 104 F.3d 258 (9th Cir. 1996)). Apart from the fact that the bond in *Rosenbaum* included a definition of "employee," part of which was similar to that in the Bond in this case, it is not apparent why Travelers believes this case supports its motion to dismiss. To begin with, *Rosenbaum* was decided on summary judgment and not at the motion to dismiss stage. Secondly, *Rosenbaum* was not decided on the basis of whether an independent contractor could be covered as an "employee" as that term was defined in the bond in that case. The *Rosenbaum* case was decided on the basis that plaintiff's theory that his investment advisor was a plan fiduciary, and therefore, a covered trustee such that the investment advisor must be covered under the bond. The Ninth Circuit observed that plaintiff's "argument depends on the premise that the terms 'fiduciary' and 'trustee' are synonymous. They are not." *Id.* at 262. The Ninth

Circuit also ruled that plaintiff's "alternative theory" that the bond covered anyone who was required to be bonded, such as a plan fiduciary, was incorrect because "Hartford's ERISA compliance endorsement does not bond everyone who must be bonded. It bonds only those classes of persons it designates." *Id.*  Therefore, the *Rosenbaum* opinion, which is not binding on this Court in any event, also does not support Travelers' arguments on its motion to dismiss.

**C.     Madoff's Status as "Independent Contractor" Is Travelers' Allegation Not Schupak's and Is Not Part of the Complaint**

Travelers' next alleges that Madoff was definitely an "independent contractor" who is exempted from coverage under the Bond. This allegation does not appear anywhere in the Complaint or the attached correspondence from Schupak. Indeed, it is Travelers' allegation, not Schupak's. As such, the question of whether Madoff acted as an "independent contractor" is not before the Court at all in resolving a motion to dismiss because it is outside the pleadings. In any event, independent contractors who are trustees, as opposed to custodians and administrators, are not excepted from coverage under the Bond. Bond, § C. Travelers' argument, therefore, is not only irrelevant, it fails under the plain language of the Bond.

Travelers again cites to the *Rosenbaum* case to support its claim that independent contractors are not covered by the Bond. Putting aside that this issue is not before the Court, to the extent *Rosenbaum* discussed independent contractors at all, the plaintiff in that case appears to have argued that its investment advisor was an independent contractor who had to be bonded and so must have been covered by the bond in that case. *Id.* at 262-63 (plaintiff "correctly points out that the regulations interpreting § 112 require the bonding of persons who, though independent contractors, perform functions normally performed by plan employees."). If Schupak had raised such theory of recovery in its Complaint, perhaps the *Rosenbaum* opinion would be helpful to this Court, but Schupak's claim is based on Madoff's status as an investment

trustee and not as an independent contractor fiduciary who must be bonded under ERISA regulations.

Finally, Travelers refuses to acknowledge that Madoff's dishonest acts were admitted by Madoff when he entered his guilty plea and acknowledged that he had orchestrated the largest ponzi scheme the world has ever seen.  Memo at p. 17 ("Since Madoff was not an employee, the dishonest acts attributed to him by plaintiff were not covered...").  Madoff's admitted securities fraud is a matter of public record, not to mention extensive worldwide media coverage, and the Court may take judicial notice of same.

## IV.  The Undefined Term "Trustee" Should Be Given Its Ordinary Meaning

Travelers' arguments and attempts to limit the terms of the Bond through citations to technical and legal definitions outside the Bond serve to highlight that the language of the Bond lacks clarity.  If the language were as plain and straightforward as Travelers would have the Court believe at this preliminary stage, then Travelers would not be delving into such complex and arcane statutes as ERISA or IRS regulations in an attempt to define what the Bond does not, and so justify its denial of coverage.  Because the term "trustee" is undefined in the policy, the relevant interpretation is that of the ordinary business person.  "Where a term used in an insurance policy is undefined, the courts of New York look to the reasonable expectation of the ordinary business person to determine how to properly interpret such a term." *Agway, Inc. v. Travelers Indemnity Co.*, 1993 WL 771008, *19 (N.D.N.Y. Dec, 6, 1993).  One source of the ordinary meaning of a term is the dictionary.

Webster's Dictionary defines the term "trustee" as:

> **trust·ee**
>
> Pronunciation: \,trəs-'tē\
> Function: *noun*

Date: 1647

**1 a :** one to whom something is entrusted **b :** a country charged
with the supervision of a trust territory
**2 a :** a natural or legal person to whom property is legally
committed to be administered for the benefit of a beneficiary (as a
person or a charitable organization) **b :** one (as a corporate
director) occupying a position of trust and performing functions
comparable to those of a trustee

MERRIAM-WEBSTER ONLINE 2010 (15 February, 2010) (http://www.merriam-

webster.com/dictionary/trustee). Madoff's role as investment trustee with complete discretion of

the investment of the Plans' funds plainly falls within this definition. Moreover, Schupak relied

on this ordinary understanding of the term in securing coverage under the Bond and delegating

investment responsibilities to its investment trustee Madoff.

Alternatively, the Court may find that the term "trustee" as used in the Bond is

ambiguous. If the Bond's language is ambiguous as to trustees, such ambiguity is due in large

part to the fact that the term "trustee" is not defined in the Bond even though it is used therein. If

the failure to define the term "trustee" creates an ambiguity as to whether Schupak is covered for

the acts of its investment trustee Madoff, such ambiguity should be resolved against the insurer,

Travelers, and in favor of the insured, Schupak. *Olin Corp. v. Certain Underwriters at Lloyd's*

*London and London Market Ins. Cos.*, 2009 WL 2981885, *3 (2d Cir. Sept. 18, 2009) (holding

that where insurance policy was ambiguous "we must resolve ambiguity 'in favor of the

insured'"); *Porco v. Lexington Ins. Co.*, 2009 WL 5171735, * 3 (S.D.N.Y. Dec. 30, 2009) (citing

rules of law that "where there is ambiguity as to the existence of coverage, doubt must be

resolved in favor of the insured and against the insurer" and "[w]here an insurance policy

reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be

construed in favor of the insured and against the insurer, drafter of the policy language."); *Italian*

19

*Designer Import Outlet, Inc. v. New York Central Mutual Fire Ins. Co.*, 891 N.Y.S.2d 260, 263 (N.Y.S., Kings Cty 2009) ("If the terms of the policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer... Indeed, where a policy's terms are ambiguous, the insurer can prevail only if it can demonstrate not only that its interpretation is reasonable but that it is the only fair interpretation"). Here, Travelers' twisted and strained attempts to define the term "trustee" in the face of the Bond's silence as to that term is unreasonable and certainly not the only fair interpretation, as seen from the dictionary definition of that term cited above. Accordingly, Travelers' Motion to Dismiss must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff Schupak Group, Inc., sponsor for Schupak Retirement Plan and Profit Sharing Plan respectfully requests that the motion to dismiss of defendant Travelers Casualty and Surety Company of America be denied.

Dated: February 25, 2010

Respectfully submitted,

_____/s/ Kristi A. Davidson_____
**BUCHANAN INGERSOLL & ROONEY PC**
Barry I. Slotnick
H. Marc Tepper
Kristi A. Davidson
620 Eighth Ave., 23rd Floor
New York, New York 10018
Tel: (212) 440-4400

*Attorneys for Plaintiffs,*
Schupak Group, Inc., Sponsor for Schupak
Retirement Plan and Profit Sharing Plan