UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

SCHUPAK GROUP, INC., SPONSOR
FOR SCHUPAK RETIREMENT PLAN
AND PROFIT SHARING PLAN,

**OPINION AND ORDER**

       **Plaintiff,**

**10 Civ. 209 (SAS)**

- against -

**TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/10

       **Defendant.**

------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Schupak Group, Inc. ("Schupak") brings this action against Travelers Casualty and Surety Company of America ("Travelers Company") alleging breach of contract based on a bond ("the Bond") issued by Travelers Company. The Bond's policy allegedly covered losses of the funds in the Schupak Group Defined Benefit Plan ("the Plan") sustained as a result of dishonest or fraudulent acts of employees. Schupak claims that because Bernard Madoff ("Madoff") is an "employee" as defined by the Bond, Schupak is entitled to damages in the amount

of $1,260,725.27 based on Madoff's fraudulent conduct.  Schupak further seeks a

declaratory judgment stating that Travelers Company must pay Schupak's loss

under the Bond.

Travelers Company claims that Schupak failed to uphold its

obligations under the Bond, which requires Schupak to submit a sworn proof of

loss statement, to cooperate with the investigation of its claim, and to provide

access to its books and records.  Travelers Company further argues that Madoff is

not an employee and thus his actions are not covered under the Bond.  Travelers

Company moves to dismiss the complaint for failure to state a claim for relief

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated

herein, the motion to dismiss is granted.

## II.     BACKGROUND[1]

### A.     Factual Background

In or around April 2003, at Madoff's recommendation, Schupak

invested funds from the Schupak Group Defined Benefit Plan in FGLS LLC

---

[1]     The following facts are presumed to be true for the purposes of
deciding this motion to dismiss.

("FGLS") as a limited partner.[2]  FGLS then entrusted the funds to Madoff,[3] who

allegedly had full trading discretion over the accounts.[4]  Schupak then secured the

Bond[5] from Travelers Company, naming Schupak as the Insured Sponsor.[6]  The

Bond included the following statement of coverage:

> A.    COVERAGE
>
> We will pay only for loss of "property" sustained by you resulting directly from dishonest or fraudulent acts committed by an "employee" acting alone or in collusion with others.  Such dishonest or fraudulent acts must be committed by the "employee" with the manifest interest:
>
> 1.    to cause you to sustain such loss; and
> 2.    to obtain financial benefit (other than employee benefits earned in the normal course of employment, including:

---

[2]    *See* Complaint ("Compl.") ¶ 9.

[3]    Though the Complaint mentions only Madoff, both Schupak and Travelers Company note elsewhere that Schupak invested the funds from the Plan in FGLS, which in turn invested them in Madoff Securities, LLC ("Madoff Securities"), which Madoff apparently controlled. *See, e.g.* 04/02/09 Schupak Letter ("Plaintiff's Initial Response"), Ex. D to Compl. ("Bernard L. Madoff Securities LLC was entrusted with the Plan's funds over which it was provided trading discretion."); *see also* 04/20/09 Travelers Company Letter ("Defendant's Second Letter"), Ex. E to Compl. (requesting documents between the Plan and Madoff Securities to demonstrate Madoff's role).

[4]    *See* Compl. ¶¶ 9-10.

[5]    *See* Travelers ERISA Compliance Bond for Non-Union Welfare Pension Plans, Ex. A to Compl.

[6]    *See* Compl. ¶ 11.

3

> salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for the "employee" or another person or entity.
>
> Subject to the Loss Sustained During Prior Insurance condition, we will pay only for that loss you sustain through acts committed during the Policy Period identified in Item 3, and discovered no later than one year from the end of the Policy Period.[7]

The Bond defined "employee" as

> [a] trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan (hereafter called Insured Plan) covered under this Policy.[8]

The Bond contains no further definition of the term "trustee."

> The Bond provides the following instructions in the event of a loss:
>
> E.    General Conditions
> ***
> 2.    <u>Your duties in the event of a loss:</u> After you [Schupak] discover a loss or a situation that may result in loss of "property" [Schupak] must:
>
>> a.    Notify [Travelers Company] as soon as possible;
>> b.    Give [Travelers Company] a detailed, sworn proof of loss within 120 days;
>> c.    Cooperate with [Travelers Company] in the investigation and settlement of any claim; and
>> d.    Permit [Travelers Company] access to

---

[7]    Bond, Ex. A to Compl.

[8]    *Id.*

4

[Schupak's] books and records.[9]

The Bond took effect on November 16, 2003.[10]

At an unspecified date after December 11, 2008, Schupak suffered a loss in the amount of $1,260,725.27 from the funds originally invested in FGLS.[11] The loss allegedly resulted from the securities frauds perpetrated by Madoff.[12] Schupak submitted its Proof of Loss Form ("Proof of Loss") to Travelers Company on January 29, 2009 and included several income spreadsheets.[13]  The Proof of Loss contains the following handwritten description under the heading "The Circumstances Under Which the Loss Took Place, With Relevant Dates":

> From April 2003, the Schupak Group Defined Benefit Plan invested funds as a limited partner in FGLS, LLC, which in turn entrusted the funds to Bernard Madoff as custodian and investment trustee. On December 11, 2008, Bernard Madoff was arrested for securities fraud and confessed his fraud.  Insured expects no more than a de minimus recovery based on SIPC limitations and public statements by Madoff's liquidating

---

[9]     *Id.*

[10]    *See* Compl. ¶ 11.

[11]    *See id.* ¶ 15.

[12]    *See id.*

[13]    *See id.* ¶ 16. The income analyses are effectively lists of numbers and provide no information regarding Madoff's role with respect to the funds invested in FGLS.

5

trustee.[14]

## B.   The Alleged Breach of Contract

Travelers Company acknowledged receipt of the Proof of Loss on February 26, 2009 ("Acknowledgment Letter").[15] The Acknowledgment Letter specifically states that "from the information [Schupak] has provided, there is a question as to if Mr. Bernard Madoff is considered an 'employee' under the terms of the bond" as "it seems. . .Mr. Madoff. . .[would be] considered an independent contractor."[16] Travelers Company noted, however, that it "[would] not make a determination as to the applicability of any provision prior to the completion of its investigation."[17] As such, Travelers Company invited Schupak to "send copies of any agreements, contracts or other documents between the Insured and Bernard L. Madoff Securities, LLC" so that Travelers Company could determine whether Madoff was in fact an "employee" covered under the Bond.[18]

Schupak replied on April 2, 2009 ("Plaintiff's Initial Response"),

---

[14]   Proof of Loss, Ex. B. to the Compl.

[15]   *See* Compl. ¶ 16; *see also* Acknowledgment Letter, Ex. C to the Compl.

[16]   Acknowledgment Letter, Ex. C to the Compl.

[17]   *Id.*

[18]   *Id.*

6

requesting payment of the claim in full and stating that the Bond provided

coverage for loss sustained by misdeeds of employees, "the definition of which

includes any natural person who is a 'trustee.'"[19] Schupak thus argued that Madoff

Securities LLC "was entrusted with the Plan's funds over which it was provided

trading discretion" and that Madoff himself "was squarely within the definition of

trustee."[20] Schupak further argued that the coverage exception for "independent

contractor" applied only to an "administrator or manager" and not to a trustee.[21]

Travelers Company responded on April 10, 2009 ("Defendant's

Second Letter"), noting that Schupak had not provided documentation supporting

Madoff's alleged status as a trustee despite the prior request in the

Acknowledgment Letter.[22] Defendant's Second Letter refers, inter alia, to ERISA

guidelines stating that "trustees" of employee benefit plans must be

> either named in the trust instrument or in the plan instrument,
> or appointed by a person who is a named fiduciary who, upon
> acceptance of being named or appointed a trustee, shall have
> exclusive authority and discretion. . .to manage and control the

---

[19]    Plaintiff's Initial Response, Ex. D to the Compl.; *see also* Compl. ¶
22.

[20]    Plaintiff's Initial Response, Ex. D to the Compl.

[21]    *Id.*

[22]    *See* Defendant's Second Letter, Ex. E to the Compl.

assets of the plan.[23]

Travelers Company noted that it had received neither copies of a plan or trust

instrument naming Madoff nor documented confirmation of Madoff being named

or appointed a trustee.[24]  Schupak replied on April 23, 2009 ("Plaintiff's Second

Letter"), stating that (1) the Plan did not require any particular form of writing

naming or appointing Madoff as a trustee, and (2) Madoff was a covered trustee by

definition as he "had possession of the Plan's funds and had full investment

discretion."[25]

Travelers Company denied Schupak's claim on April 29, 2009

("Denial Letter") based on the limited information it had due to Schupak's failure

or refusal to provide the requested documentation regarding Madoff's role.[26]  On

May 13, 2009 ("Plaintiff's Final Letter"), Schupak argued that the Bond "does not

require any specific documentation or formal process for 'appointment' of a

trustee" and that Schupak "provided [Travelers Company] with all of the

---

[23]     *Id.*

[24]     *See id.*

[25]     Plaintiff's Second Letter, Ex. F to the Compl.

[26]     *See* Denial Letter, Ex. G to the Compl.

8

information available evidencing Madoff's role as trustee. . . ."[27]  In a May 18, 2009 letter ("Defendant's Final Letter"), Travelers Company stated that it would stand by its original decision to deny coverage.[28]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the Court "must take all of the factual allegations in the complaint as true."[29]  As such, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[30]  Rather, to survive a motion to dismiss, the complaint must include "sufficient factual matter. . .to state a claim for relief that is plausible on its face."[31]

Facial plausibility is satisfied where the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged" based on plaintiff's factual pleadings.[32]  Though not a "probability requirement," the

---

[27]   Plaintiff's Final Letter, Ex. H to the Compl.

[28]   *See* Defendant's Final Letter, Ex. I to the Compl.

[29]   *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009).

[30]   *Id.*

[31]   *Id.* (citation omitted).

[32]   *Id.*

9

complaint must embody "more than a sheer possibility that a defendant has acted unlawfully."[33]  Where the court cannot "infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief."[34]

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the pleading.  Even so, "[d]ocuments that are attached to the [pleading] or incorporated in it by reference are deemed part of the pleading and may be considered."[35]  The court is only allowed to consider documents outside the pleading if the documents are integral to the pleading or subject to judicial notice.[36]

## B.    Amendments to Pleadings

Rule 15(a) provides that, "other than amendments as a matter of course, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice

---

[33]    *Id.*

[34]    *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

[35]    *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[36]    *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

10

so requires."[37]  It is "within the sound discretion of the district court to grant or

deny leave to amend." [38]  The Supreme Court has explained that

> [i]f the underlying facts or circumstances relied upon by a
> plaintiff may be a proper subject of relief, he ought to be
> afforded an opportunity to test his claim on the merits.  In
> the absence of any apparent or declared reason — such as
> undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. — the leave sought should, as
> the rules require, be "freely given."[39]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to allow

leave to replead.'"[40]  Where plaintiff inadequately pleads a claim but cannot offer

additional substantive information to cure the deficient pleading, granting leave to

---

[37]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[38]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[39]     *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *Accord, e.g., Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[40]     *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

replead is futile.[41]

## C.   Breach of Contract

For a breach of contract claim under New York law, plaintiff must

show "(1) the existence of an agreement, (2) adequate performance of the contract

by the [claimant], (3) breach of contract by the [accused], and (4) damages."[42]  The

claimant must allege the specific provisions of the contract upon which the breach

of contract claim is based.[43]  A claim for breach of contract cannot be sustained

simply by a conclusory statement that the accused breached a contract.[44]

## IV.   DISCUSSION

*First*, Travelers Company argues that the Complaint must be

dismissed due to Schupak's failure to submit a sworn proof of loss as required by

the Bond. *Second*, Travelers Company asserts that Schupak has failed to comply

with the "cooperation" provision of the Bond based on Schupak's refusal to

---

[41]      *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[42]      *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted).

[43]      *See Sheridan v. Trustees of Columbia Univ. in City of New York*, 745 N.Y.S.2d 18, 19 (1st Dep't 2002); *Matter of Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995).

[44]      *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

12

provide any documentation regarding Madoff's role.[45]  *Third,* Travelers Company

claims that Madoff's actions are not covered under the terms of the Bond because

Madoff is not an "employee" and specifically not a "trustee" of the Plan.[46]  In the

alternative, Travelers Company claims Madoff is an "independent contractor" and

is therefore specifically excluded from coverage under the Plan.  Regardless,

Travelers Company argues that it cannot be liable for its refusal of Schupak's

claim because Madoff is not covered by the terms of the Bond.

## A.    Schupak Has Failed to Sufficiently Plead Adequate Performance of the Contract

The parties do not dispute the existence of a contract.  The Bond

requires (1) notice of the loss as soon as possible, (2) a detailed, sworn proof of

the loss, (3) cooperation with Travelers Company's investigation or settlement of

any claim, and (4) access to books and records.[47]  Schupak has failed to plead facts

demonstrating adequate performance of at least two – and arguably three – of the

above factors in a manner sufficient to meet the *Iqbal* and *Twombly* standard.

### 1.    Notice of the Loss

---

[45]    *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 17-18, 21.

[46]    *See id.* at 10.

[47]    *See* Bond, Ex. A to Compl.

13

Schupak has pled that it notified Travelers Company of the loss.[48]
The parties do not contest the existence of the notification or that the notification
occurred within a reasonable time.[49]

### 2.    Proof of Loss

Travelers Company notes that Schupak "failed to sign or swear to the
proof of loss submitted in support of its claim. . . ."[50]  Despite Schupak's
obligations under the Bond to submit a sworn proof of loss,[51] Schupak has failed
to plead any facts demonstrating that its Proof of Loss included the required
notarized signature.[52]  In fact, Schupak cannot so plead as the copy of the Proof of
Loss attached to the Complaint is clearly neither signed nor sworn.[53]  Schupak's

---

[48]    *See* Compl. ¶ 16.

[49]    *See* Acknowledgment Letter, Ex. C to the Compl. (acknowledging receipt of the Proof of Loss).

[50]    Def. Mem. at 17.

[51]    *See* Bond, Section E(2)(b), Ex. A to the Compl.

[52]    *See* Compl. ¶ 16 (noting only that Schupak submitted its Proof of Loss).

[53]    *See* Proof of Loss, Ex. B. to the Compl.  Schupak argues that Travelers Company's commencement of an investigation waives its objections to the defects of the Proof of Loss but cites no law to support this position. *See* Plaintiff's Opposition to Travelers Company's Motion to Dismiss ("Opp. Mem.") at 6.  The New York Uniform Commercial Code, Section 1-207 provides that "[a] party who with explicit reservation of rights performs or promises performance or

pleadings regarding proof of loss are therefore insufficient to demonstrate a

plausible inference of adequate performance by Schupak under the terms of the

Bond. Given the inescapable clarity of this point, any attempt by plaintiff to

replead would be futile.

### 3.   Cooperation with Travelers Company's Investigation

Schupak pleads in a conclusory fashion that it "offered to cooperate

all along with the Traveler's [sic] investigation including permitting access to the

Schupak premises to review records. . . ."[54]  As Schupak pleads no further facts to

support or lend context to this assertion,[55] this claim is insufficient to demonstrate

---

assents to performance in a manner demanded or offered by the other party does
not thereby prejudice the rights reserved." Travelers Company expressly reserved
its rights in every letter sent to Schupak. *See* Acknowledgment Letter, Ex. C to
the Compl.; Defendant's Second Letter, Ex. E to the Compl.; Denial Letter, Ex. G
to the Compl.; Defendant's Final Letter, Ex. I to the Compl. That Travelers
Company did not advise Schupak of the absence of a signature and notarization is
irrelevant.

[54]    Compl. ¶ 27.

[55]    Schupak claims it has sent all the information at its disposal regarding
Madoff to Travelers Company. *See* Opp. Mem. at 7; *see also* Plaintiff's Final
Letter, Ex. H to the Compl. *But see* Plaintiff's Initial Response, Ex. D to the
Compl. ("Please let me know if you need any additional information relating to
this claim."). Schupak provided Travelers Company only with a set of income
spreadsheets attached to its Proof of Loss. *See* Proof of Loss, Ex. B to the Compl.
Travelers Company argues that plaintiff would have been obligated to file – and
therefore would have copies of – IRS Form 5500, the schedules of which require
identification of each of the Insured Plan's trustees. *See* Def. Mem. at 11.

a plausible inference of Schupak's adequate cooperation under the terms of the Bond.[56]

**B.     The Court Need Not Reach Travelers Company's Alleged Breach or Damages**

Schupak has failed to plead facts plausibly evidencing a sworn Proof of Loss as per the terms of the Bond.  Schupak has arguably also failed to sufficiently plead facts plausibly demonstrating that Schupak (1) cooperated with Travelers Company's investigation and (2) permitted access to its books and records.  Thus, the second prong of a New York breach of contract claim – adequate performance under the contract by the claimant – is insufficiently pled

---

Schupak claims the terms of the Bond do not require any particular writing to demonstrate a trustee relationship.  *See* Opp. Mem. at 11; *see also* Plaintiff's Final Letter, Ex. H to the Compl.  Regardless, plaintiff's scant assertions of cooperation as pled are arguably inadequate under a plausibility standard.

[56]     Schupak also claims that Travelers Company failed to conduct the required investigation.  *See* Opp. Mem. at 7.  Travelers Company counters that its investigation necessarily closed after Schupak refused to send any further documents.  *See* Denial Letter, Ex. G to the Compl.  The Complaint does not allege that Schupak provided books and records to Travelers Company and does not allege that Schupak invited Travelers Company to the premises to review books and records.  In addition, not one of Schupak's letters provides such an invitation.  As such, Schupak has arguably insufficiently pled adequate performance under its "access to books and records" obligation as well.

under *Iqbal* and *Twombly*.[57]

## V.    CONCLUSION

For the foregoing reasons, Travelers Company's motion is granted.

The Clerk of the Court is directed to close this motion (Docket No. 4) and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 13, 2010

---

[57]    Because of these pleading deficiencies, there is no need for me to
address the sufficiency of the pleadings regarding Travelers Company's alleged
breach based on its failure to cover Madoff's alleged actions.

17

## - Appearances -

**For Plaintiffs:**

Barry I. Slotnick, Esq.
H. Marc Tepper, Esq.
Kristi A. Davidson, Esq.
Buchanan Ingersoll & Rooney PC
620 Eighth Ave., 23rd Floor
New York, NY 10018
(212) 440-4400

**For Defendants:**

Richard S. Mills, Esq.
Carol A. Pisano
McElroy, Deutsch, Mulvaney & Carpenter LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, NY 10005
(212) 483-9490